IN THE UNITED STATES DISTRICT COURT
EASTERN SECTION OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BILLIARDS AND BREWS, LLC and ) <br> RICHARD LAWHORN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TENNESSEE ALCOHOL BEVERAGE ) <br> COMMISSION, CITY OF KNOXVILLE, ) <br> MAYOR INDYA KINCANNON, ) <br> KNOX COUNTY ) <br> BOARD OF HEALTH, ) <br> SRGT. JOHN COWARD, ) <br> KNOXVILLE BEER BOARD, ) <br> STEVEN GROOMS, ) <br> ALYSON DYER, ) <br> as well as other defendants not yet known. ) | Civil Action No.: _____ <br> JURY TRIAL DEMANDED |

## COMPLAINT

Comes the Plaintiffs, through under-signed counsel, and for their Complaint for damages both jointly and severally against the named Defendants herein and all defendants/conspirators not yet known and would state to this Honorable Court the following:

## PARTIES

1. Plaintiff, Billiards and Brews, LLC (hereinafter "B&B"), is a limited liability company duly authorized as such under the laws of Tennessee.

2. Plaintiff. Richard Lawhorn, (hereinafter "Lawhorn"), is a resident and citizen of Knoxville, Knox County, Tennessee and is the sole-owner of B&B.

3. Defendant, Tennessee Alcohol Beverage Commission, (hereinafter "TABC"), is a division of the Tennessee government and regulates the licensing and sale of liquor in Tennessee.

4. Defendant, The City of Knoxville, is located in the county seat of Knox County, Tennessee.

5. Defendant, Mayor Indya Kincannon, (hereinafter "Mayor Kincannon"), is the current elected Mayor of Knoxville.

6. Defendant, Knox County Board of Health, (hereinafter "KCBH"), was established by way of the Knox County Charter.

7. Defendant, Srgt. John Coward, (hereinafter "Srgt. Coward"), is an officer with the Knoxville Police Department's inspections unit.

8. Defendant, Knoxville Beer Board, (hereinafter "KBB"), handles licensing and regulation of beer in the City of Knoxville.

9. Defendant, Special Agent Steven Grooms, (hereinafter "Agent Grooms"), is the Assistant Special Agent in Charge of the Knoxville Metropolitan Area for TABC.

10. Alyson Dyer (hereinafter "Dyer"), is the Attorney for the City of Knoxville.

## JURISDICTION AND VENUE

11. This Court has jurisdiction and venue over the Plaintiff's claims brought pursuant to Title 42 of the United States Code section 1983-1988. *See* 28 U.S.C. § 1331, 1343(a)(3).

12. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to Title 28 of the United States Code section 1367.

13. Venue exists in this Court pursuant to Title 28 of the United States Code section 1391.

## FACTS GIVING RISE TO CAUSES OF ACTION

14. B&B is located in the city limits of Knoxville, Tennessee. B&B's primary place of business at all relevant times herein was located at 8705 Unicorn Drive, Suite 110, Knoxville, TN 37923. B&B is exclusively owned by Lawhorn.

15. B&B holds a limited-service restaurant Liquor-by-the-Drink license allowing them to sell liquor, wine, and high-gravity beer at a restaurant or bar in a city or county which has authorized the sale of alcoholic beverages for on-premise consumption issued by TABC.

16. A beer permit was issued to B&B allowing it to sell beer in City of Knoxville.

17. The Fourteenth Amendment prohibits any state from depriving any person of life, liberty, or property without due process of law, and then following that, in a third entirely separate and independent provision it prohibits any state from denying to "any person within its jurisdiction the equal protection of the laws."

18. The Supreme Court has long recognized that an individual may have a significant interest in maintaining a license. *See, e.g., Burson*, 402 U.S. at 539 ("Once licenses are issued . . . their continued possession may become essential in the pursuit of a "livelihood"). More generally, the Court has "repeatedly recognized the severity of depriving someone of his or her livelihood." *FDIC v. Mallen*, 486 U.S. 230, 243 (1988).

19. A large majority of B&B's revenues in order to pay its bills and its owner, Lawhorn, are obtained from the sale of beer and liquor. In addition, B&B's employees depend on the sale of beer and liquor for their wages in order to support their families.

20. In November of 2020 due to the Covid-19 Pandemic, KCBH issued a regulation (2020-7) in an attempt to curtail the transmission of the Covid-19 virus. In sum, KCBH advised that bars should close at 10 PM rather than 3 AM. The rationale behind the regulation was that if patrons were not in bars after 10 PM consuming alcohol they would somehow avoid being infected with the Covid-19 virus. Alarmingly, 2020-7 did not apply to patrons drinking in bars up to 10 PM. This rationale is fatally flawed and fails to meet rational basis review because people are just as likely to get infected with Covid-19 drinking in bars at 5 PM as compared to 10:01 PM or later in the evening.

21. The KCBH regulation set forth the following:

> "All restaurants, bars, and similar food or drink establishments, including nightclubs, shall close for on-premises consumption and activities at 10:00 p.m. EST and not permit the on-premises consumption and activities to resume until 5:00 a.m. the following day that they are opened for business. They may remain open after 10:00 p.m. only to offer drive-thru, pickup, carryout, or delivery service for food or drink, and persons are highly encouraged to use such drive-thru, pickup, carryout, or delivery options to support such businesses during this emergency."

22. As a result of the KCBH's regulation the City of Knoxville amended Section I, Chapter 4, Article II, Division II, Section 4-73(c) of the Code of City Ordinances, which stated in pertinent part:

> "Executive orders issued by the Governor, executive orders issued by the mayor, resolutions and regulations issued by the Knox County Board of Health or orders issued by the Knox County Health Director or the Knox County Health Officer have the force of law and for purposes of this subsection these orders, resolutions, and regulations are considered to be laws that must be complied with by beer permittees. Failure to comply with the requirement set forth in any such law may be cause for a beer permit to be revoked or suspended."

23. Section I, Chapter 4, Article II, Division II, Section 4-73(b) of the Code of City Ordinances went on to further state:

> "The time constraints set forth in this subsection shall be further limited if the hours allowed for on-premises sale or consumption of alcoholic beverages are limited by lawful order, regulation, or resolution of a regulatory authority having jurisdiction to do so. Such regulatory authorities include but are not limited to the governor of the state of Tennessee, Knox County Board of Health, and the Knox County Health Director."

24. Notice of this new Regulation was distributed to bars, restaurants and night clubs by the Knoxville City Police, which also indicated that any violator could be prosecuted pursuant to T.C.A. § 68-2-602. It is important to note that Governor Bill Lee's Tennessee Pledge Guidelines did not authorize Mayor Kincannon to treat the KCBH regulation as *law*.

25. City of Knoxville ordinance 4-32(b) allowed the City of Knoxville to impose the curfew ordinance on bars, restaurants and night clubs located in the City of Knoxville.

26. Once made aware of the new ordinance, Lawhorn was outspoken in the Knoxville media/press about the ordinance being unconstitutional and refused to close his business at 10 PM. He was also interviewed on Channel 10 News and was outspoken that he felt that Mayor Kincannon was doing a bad job and that he was going to run for Mayor Kincannon's position in the next election.

27. As a result of exercising his constitutional rights to not have his business closed after 10 PM, and upon information and belief, Mayor Kincannon entered into a conspiracy with the Defendants herein, as well as defendants/conspirators not yet known, to retaliate against both Lawhorn and B&B. Upon further information and belief, Mayor Kincannon told Srgt. Coward that if Lawhorn did not comply with the unconstitutional curfew she would shut down B&B.

28. Shortly after Lawhorn was critical of Mayor Kincannon's campaign to close the doors of Knoxville bars, restaurants and night clubs after 10 PM for no rational purpose, upon information and belief, Mayor Kincannon requested her husband, Ben Barton, to take to the media and criticize Lawhorn. During this interview, Ben Barton did not disclose that he was an employee as a professor at the U.T. College of Law.

29. B&B was cited several times by the Knoxville Police Department for violation of the unconstitutional ordinance 2020-7 as it is applicable to City bars, restaurants and night clubs pursuant to 4-32(b).

30. Upon information and belief, Mayor Kincannon conspired with Sgt. Coward, as well as other defendants/conspirators not yet known, to cite B&B for violations of 4-32(b) when, in fact, B&B was not violating 4-32(b) so as to suspend both B&B's beer permit and liquor license, thereby constituting an unconstitutional taking of B&B's and Lawhorn's personal property.

31. Upon information and belief, said conspiracy to violate B&B's and Lawhorn's constitutional rights is ongoing and continuing thereby tolling the applicable statute of limitations herein.

32. Upon information and belief, and in furtherance of said conspiracy which is ongoing, Mayor Kincannon had Sgt. Coward begin entering B&B in order to make up false allegations of violating 4-32(b).

33. On December 4, 2020, Sgt. Coward entered B&B after 10 PM and alleged that he observed patrons consuming beer and liquor. However, to the contrary, B&B's video cameras inside the establishment showed no alcohol being served or consumed.

34. On December 5, 2020, Sgt. Coward again entered B&B, allegedly at 10:28 PM and alleged that he had observed patrons consuming beer. However, to the contrary, B&B's video cameras inside the establishment showed no alcohol being served or consumed.

35. On December 11, 2020, Sgt. Coward entered B&B, allegedly at 11:09 PM and stated that he observed patrons drinking beer and perhaps liquor. However, to the contrary,

B&B's video cameras inside the establishment showed no alcohol being served or consumed.

36. On December 17, 2020, Sgt. Coward entered B&B, allegedly at 10:35 PM, and stated that he observed patrons drinking beer and alcohol. However, to the contrary, B&B's video cameras inside the establishment showed no beer or alcohol being served or consumed.

37. On December 18, 2020, Sgt. Coward entered B&B, allegedly at 11:59 PM, and stated that he observed patrons drinking beer and alcohol. However, to the contrary, B&B's video cameras inside the establishment showed no beer or alcohol being served or consumed.

38. On December 19, 2020, Sgt. Coward entered B&B, allegedly at 10:55 PM, and stated that he observed patrons drinking beer and alcohol. However, to the contrary, B&B's video cameras inside the establishment showed no beer or alcohol being served or consumed.

39. On December 31, 2020, Sgt. Coward entered B&B, allegedly at 11:40 PM, and stated that he observed patrons drinking beer and alcohol. However, to the contrary, B&B's video cameras inside the establishment showed no beer or alcohol being served or consumed.

40. On January 2, 2021, Sgt. Coward entered B&B, allegedly at 10:58 PM, and stated that he observed patrons drinking beer and alcohol. However, to the contrary, B&B's video cameras inside the establishment showed no beer or alcohol being served or consumed.

41. On January 8, 2021, Sgt. Coward entered B&B, allegedly at 10:40 PM, and stated that he observed patrons drinking beer and alcohol. However, to the contrary, B&B's video cameras inside the establishment showed no beer or alcohol being served or consumed.

42. On January 9, 2021, Sgt. Coward, entered B&B allegedly at 10:50 PM. While at B&B, Sgt. Coward indicated he observed beer and alcohol being served. However, to the contrary, B&B's video cameras inside the establishment showed no alcohol being served or consumed.

43. On January 15, 2021, Sgt. Coward entered B&B at allegedly 10:59 PM and again stated that he saw beer and liquor being served to patrons. However, to the contrary, B&B's video cameras inside the establishment showed no alcohol being served or consumed.

44. On January 21, 2021, Sgt. Coward entered B&B at allegedly 10:55 PM and again stated he saw beer and liquor being served to patrons. However, to the contrary, B&B's video cameras inside the establishment showed no alcohol being served or consumed.

45. On January 22, 2021, Sgt. Coward entered B&B at allegedly 10:58 PM and again stated the saw beer and liquor being consumed by patrons but yet again B&B's video cameras inside the establishment showed no alcohol being served or consumed.

46. On all noted occasions set forth above, Sgt. Coward cited B&B for violation of 4-32(b) - failure to close at 10 PM.

47. In the interim, and prior to B&B having a chance to be heard and defend itself against these unconstitutional citations, Sgt. Coward was conspiring in secret by email transmission, and perhaps other means of communication, with Agent Grooms to have B&B's liquor license revoked – without a hearing on same. These illegal acts by Sgt. Coward, as an authorized agent of the Knoxville Beer Board, and Agent Grooms, as an

authorized agent of TABC constitutes a violation of the Tennessee Sunshine Law and Tennessee Open Meetings Act[1] and was in furtherance of the grand ongoing conspiracy against the Plaintiffs by the Defendants herein, as well as other defendants/conspirators not yet known.

48. Upon information and belief, Dyer also conspired with Sgt. Coward and advised him that as a beer enforcement officer he had the authority to enforce the KCBH resolutions or regulations. Dyer as an attorney knew or should off known this was not true and that Sgt. Coward as a beer enforcement officer only had authority to write citations for the sale or consumption of alcoholic beverages in a permitted establishment.

49. As noted above, the citations the Plaintiffs received all were written for staying open past the unconstitutional 10 PM curfew and not for the sale or consumption of alcoholic beverages.

50. In addition, Agent Grooms suspended the Plaintiffs' liquor license without a hearing, violating the Plaintiffs' due process rights, based on citations and secret communications with Sgt. Coward.

51. As a direct result of the illegal and unconstitutional acts set forth herein the Plaintiffs have lost hundreds of thousands of dollars in profits from its beer permit being suspended and liquor license being revoked. B&B's beer permit and liquor license remain suspended and revoked to date.

---

[1] The Tennessee Sunshine Law declares that the formation of public policy and public business must be transacted in public and not in secret. The Tennessee Open Meetings Act requires all meetings of a governing body to be open to the public and that a governing body provide adequate public notice of the meeting.

52. Other bars, restaurants and night clubs were also subjected to the unconstitutional curfew law, however, upon information and belief none of them were punished as severely as B&B.

53. As a result of the illegal and unconstitutional acts set forth herein, Lawhorn suffered severe mental and emotional anguish, to include, but not be limited to, migraine headaches, depression, sleepless nights, nausea, fear of losing his livelihood and going bankrupt, etc.

## COUNT I-VIOLATION OF 42 U.S.C. § 1983

54. Plaintiffs restate Paragraphs 1-53 in support of Count I.

55. At all times material hereto, Defendants were acting under color of state law in their individual and official capacities.

56. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. 42 U.S.C. § 1983 et seq.

57. Moreover, the Fifth Amendment creates a number of rights relevant to both criminal and civil legal proceedings. In criminal cases, the Fifth Amendment guarantees the right to a grand jury, forbids "double jeopardy," and protects against self-incrimination. It also requires that "due process of law" be part of any proceeding that denies a citizen

"life, liberty or property" and requires the government to compensate citizens when it takes private property for public use.

58. Due Process - the Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.

59. The Defendants unconstitutional and illegal acts as set forth hereinabove violates Plaintiffs' rights guaranteed by 42 U.S.C. §1983, including, but not limited to the following, citing the Plaintiffs under an unconstitutional law that fails the rational basis test, acting in concert with one another to deprive the Plaintiffs of their property rights and acting in secrecy in order to further the grand conspiracy against the Plaintiffs in furtherance of same – which is ongoing.

60. These unconstitutional and illegal acts have caused Lawhorn severe mental and emotional anguish as noted above.

## COUNT II-LOSS OF PERSONAL PROPERTY

61. Plaintiffs restate Paragraphs 1-53 in support of Count II.

62. Defendants' illegal and unconstitutional acts set forth hereinabove have caused Plaintiffs the loss of personal property by way of lost revenues for having their beer permit suspended and liquor license revoked.

63. Loss of personal property in Tennessee carries with it a three-year statute. See T.C.A. § 28-3-105.

64. As a direct result of the Defendants' illegal and unconstitutional acts set forth hereinabove the Plaintiffs have suffered hundreds of thousands of dollars in personal property loss and continue to suffer said losses on a daily basis.

## COUNT III-CONSPIRACY TO VIOLATE CIVIL RIGHTS – 42 U.S.C. § 1985

65. Plaintiff restates Paragraphs 1-53 in support of Count III.

66. Upon information and belief, Defendants, and perhaps other yet unknown defendants conspired to deny the Plaintiffs' right to the Equal Protection of the Laws.

67. Upon information and belief, Defendants, and perhaps other yet unknown defendants treated other bars, restaurants and night clubs, such as Paul's Oasis, differently and more beneficially regarding the curfew law by either not fining them or by not suspending their beer permit and revoking their liquor licenses and/or by doing both as was done to the Plaintiffs.

68. As a direct result, and upon information and belief, Defendants' conspiracy to violate the Plaintiffs' right to the Equal Protection of the Laws has caused the Plaintiffs hundreds of thousands of dollars in damages.

69. As a direct result, and upon information and belief, Defendants' conspiracy to violate the Plaintiffs' right to the Equal Protection of the Laws has caused Lawhorn severe mental and emotional anguish as set forth hereinabove. Said conspiracy is ongoing and continuing as are damages.

## COUNT IV-VIOLATION OF THE TENNESSEE OPEN MEETINGS ACT – T.C.A. § 8-44-101 et seq.

70. Plaintiff restates Paragraphs 1-53 in support of Count IV.

71. Upon information and belief, Defendants, Knoxville Beer Board and the TABC acted in secrecy concerning the Plaintiffs' beer permit and liquor license.

72. As a direct result, Plaintiffs' and the publics' right to have knowledge of the facts discussed and to be heard on same were violated.

73. As a result, and upon information and relief, Defendants, Knoxville Beer Board and the TABC's violation of the Tennessee Open Meetings Act results in the Plaintiffs' suspension of the beer license and revocation of the liquor license void.

**WHEREFORE, PLAINTIFFS PRAY FOR THE ENTRY OF A JUDGMENT AGAINST ALL DEFENDANTS, AS WELL AS OTHERS NOT YET KNOWN, BOTH JOINTLY AND SEVERALLY, IN THE AMOUNT OF $30,000,000, FOR A DECLARATORY JUDGMENT THAT THE CURFEW LAW FAILS TO MEET THE RATIONAL BASIS TEST AND IS THEREFORE UNCONSITTUIONALLY VOID, FOR A JURY TO TRY THIS CAUSE, FOR AN AWARD OF ATTORNEY'S FEES AND FOR AN AWARD OF DISCRETIONARY COSTS. IN ADDITION, AS THE MATTER IS CURRENLTY BEING APPEALED FROM THE TABC HEARING OFFICER, FOR A MOTION TO STAY THIS CASE UNTIL SUCH TIME THAT THOSE ADMINISTRATIVE REMEDIES ARE EXHAUSTED.**

Respectfully submitted,

s/Darren V. Berg
Darren V. Berg
Lead Counsel for Plaintiffs
P.O. Box 453
Knoxville, TN 37901
865-773-8799
dberglawfirm@gmail.com

s/Russ Egli
Russ Egli
The Egli Law Firm
Co-Counsel for Plaintiffs
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934

865-304-4125
russegliatty@tds.net